interest which the *certain* liability creates. (*h*) The case of *The King* v. *The Governor and Directors of the poor of St. Mary Magdalen Bermondsey* (*i*) extends the full length of the present case.

The Court is, therefore, of opinion, that *Jones* was not a competent witness ; and the judgment of the Superior Court must be reversed.

(*h*) *Peake's Ev.* 149.          (*i*) 3 *East* 7.

1807.

OWEN
*v.*
MANN.

---

## Wolcott *v.* Dwight.

### In the Court below,

JOSIAH DWIGHT, and PHINEHAS ASHMUN, *Plaintiffs;* ALEX-
ANDER WOLCOTT, *Defendant.*

THE defendants in error pleaded in abatement, " That " said writ is no otherwise directed than to *James Thomas*, " of Middletown, in the county of Middlesex, as an indiffer- " ent person, who is commanded to serve and return the " same ; and said writ has been no otherwise served, than " by said *Thomas's* leaving a paper, purporting to be a copy " of said writ, with each of them the said *Dwight* and *Ash-* " *mun*, at Northampton, in the county of Hampshire, and " commonwealth of Massachusetts, at which place the said " *Dwight* and *Ashmun* reside, and to which they are described " in the plaintiffs' writ as belonging, and by leaving a paper, " purporting to be a copy as aforesaid, with *Theodore* " *Dwight*, Esquire, of Hartford, in the county of Hartford,

Whether, in case the defendants in error live out of the state, having an attorney within, ser- vice of the writ may be made by an indifferent person, to whom the same is di- rected, by leaving copies with such attor- ney, and the defendants ?

In such case, a plea in abatement for defective service, stating, that a copy was left with D. *who appears by the plaintiff's writ to be attorney of record to the defendants,* without directly averring the fact, that he was attorney to the defendants at the time of bringing the writ, is ill on general demurrer.

1807.

WOLCOTT
v.
DWIGHT.

" who appears by the plaintiff's writ, to be attorney of record
" to the said *Dwight* and *Ashmun*, the defendants in error ;
" whereas said writ ought to have been directed to, and
" served by the sheriff of the county of Hartford aforesaid,
" or his deputy, or either of the constables of the town of
" Hartford in said county of Hartford."

To this plea there was a demurrer.

*Ingersoll*, and *Daggett*, in support of the demurrer, con-
tended, 1. That the service was good ; and 2. That the plea
was ill.

1. No provision is made *by statute*, for service upon per-
sons situated like the defendants in error. By the act con-
cerning " civil actions," (a) service is to be made, by reading
the writ in the hearing of the defendant, by leaving a copy
at the place of his usual abode, or by attaching his person
or property,—and in no other manner. The statute con-
cerning foreign attachments (b) is not applicable to this case.
The object of that process is only to *secure a debt*, where
the debtor has absconded. It respects such cases only,
where you can have *an attachment*. There is no other
statute, which renders service upon the attorney good upon
the defendant out of the state. Then comes in the rule
of June, 1804 ; (c) this is a case, where " the service is not
" prescribed by law ;" and is precisely such an one, as the
Court had in view, when they made the rule.

Further, if the plea has any merits, it will follow, that
no service whatever can be made in a case circumstanced
like the present. The sheriff of Hartford county cannot
go into Massachusetts. Service out of the state cannot be
made otherwise than by an indifferent person.

Again, it may well be doubted, whether the act of Octo-

(a) *Stat.* 24, 25, *edit.* 1796.        (b) *Ib.* 137, 138.
(c) *Ante, vol.* 1. *p.* 330.

ber, 1804, (d) relates at all to the service of writs of error. It provides that " no *writ of attachment* or *summons*, other " than a *subpœna*, shall be directed to an indifferent person," except under certain restrictions. It evidently regards mesne process only.

2. A plea in abatement is a mere dilatory plea, not affecting the merits of the case. The greatest precision is, therefore, required. (e) The courts say, they cannot hold too strict a hand over these sorts of pleadings, which are calculated to defeat the justice of the case. (f) This plea is defective on two grounds : First, because it does not appear from the plea and record taken together, that *T. Dwight*, Esquire, was attorney to the defendants *at the time of bringing the writ of error.* It only appears, that he was their attorney, when the original action was appealed from the County Court to the Superior Court ; he might afterwards have been dismissed. Secondly, it would not be sufficient, if that fact *did* appear from the record, unless it was directly averred in the plea. But the plea says only, that he " appears " by the plaintiff's writ to be attorney of record to the de- " fendants." Matters of abatement must always be pleaded ; that they appear on the declaration will not avail the defendant. The case of *Addison* v. *Overend* (g) is decisive of this point.

*Dana*, and *Dwight*, contra.

The statute of October, 1804, provides, that no attachment or summons shall be directed to an indifferent person, except in two cases. This is not one of them.

If a man out of the state has a proper agent here, notice to that agent, and service upon him, will be notice to, and

(d) *Stat.* 674, *edit.* 1796.

(e) 3 *Term Rep.* 186, *Hixon* v. *Binns.*

(f) 5 *Term. Rep.* 488, *Roberts* v. *Moon.* 8 *Term Rep,* 515, *Haworth* v. *Spraggs.*

(g) 8 *Term Rep.* 766.

1807.

WOLCOTT
*v.*
DWIGHT.

service upon the principal ; and this too in an original suit. But these defendants, the original plaintiffs, do not stand in the predicament of persons who have not been before the court. Service upon *the attorney of record* is legal service. The object of the law, requiring the name of the attorney, by whom a stranger appears, to be entered in the record of the case, is, that in case of a writ of error, or *scire facias,* the adverse party may know upon whom to make service. If the party attempts to make such service, and makes it defectively, it is proper ground of abatement.

If the plea is *informal,* advantage can be taken of it only by special demurrer. In all the cases cited from the *Term Reports,* there were special demurrers.

THE COURT adjudged the plea insufficient, on the sole ground, that it did not aver, that *T. Dwight,* Esquire, was the attorney of the defendants *at the time of service.* On the other point, they made no decision.

## On the merits,

The case was as follows :

COVENANT.
PLEADING.
RULE OF
DAMAGES.

In an action of covenant, the plaintiffs declared, That being desirous of procuring to themselves a good title of 130,000 acres of unlocated land in Virginia, the property of that state, they, by articles of agreement between them and the defendant, on the 5th of September, 1795, agreed to pay to the defendant, on or before the 7th of the same month, $ 3,900, being three cents *per* acre for the tract specified ; also, on or before the 1st of January, 1796, the further sum of one cent *per* acre ; also, on or before the 1st of January, 1798, the further sum of six cents *per* acre ; with lawful interest thereon from the 1st of January, 1797. The defendant, on his part, agreed to go immediately to Virginia, and make inquiry ; and if the tract should be found not located, or purchased, to survey and locate the same for the plain-

tiffs ; also to procure a title, grant, or patent to the plaintiffs, or to such other person, or persons, as they should, on or before the 1st of April, 1796, appoint and direct ; and that all should be completed at the sole expense of the defendant, so that the land, and the procuring the title, should cost the plaintiffs no more than ten cents *per* acre. If the defendant could not procure the whole tract, he was to procure for the plaintiffs a title as aforesaid to a certain proportionate quantity ; if no part of the tract could be procured, he was to refund, within thirty days after his return to Connecticut, the whole of the sum of three cents *per* acre first advanced, and the plaintiffs were not to make any further payments. If only part of the 130,000 acres should be procured by the defendant for the plaintiffs, it was agreed, that there should be an apportionment of the payments. The plaintiffs also agreed, that if the tract of land should be found wholly, or in part, vacant, and the defendant should locate the same ; and if the plaintiffs should not pay to the defendant said sum of six cents *per* acre, on the 1st of January, 1796 ; the defendant should be at liberty, at any time within two months from the 1st of January, 1796, to repay to the plaintiffs the advanced sum of three cents *per* acre, with interest from the time of receiving it ; and should thereupon be excused from any further claim.

The declaration further stated, that the plaintiffs, in performance of their convenants, paid to the defendants on the 7th of September, 1795, the sum of $ 3,900, being three cents *per* acre on 130,000 acres ; that the defendant immediately proceeded to Virginia ; and that he returned about the 1st of January, 1796, and represented, that he had been able to procure for the plaintiffs no more than 105,300 acres of the tract mentioned in the articles of agreement. He stated, however, that he had contracted with *John Miller*, Esquire, of Virginia, for a large tract of land, out of which he proposed, that the plaintiffs should receive 24,700 acres, to make up the deficiency, provided they would pay him one cent additional *per* acre. To this proposition the

plaintiffs agreed ; and accordingly paid, in fulfilment of their covenant, on the 1st of January, 1796, the sum of $ 1,053, being one cent *per* acre on 105,300 acres, and the sum of $ 494, being two cents *per* acre on 24,700 acres.

The declaration then averred, that the plaintiffs did not, on or before the 1st of April, 1796, appoint any other person, or persons, to receive the grant, title, or patent of said lands, and have stood ready to receive said grant, title or patent, of the defendant ; that the defendant wholly failed to procure and deliver to the plaintiffs any grant, title, or patent ; that he did not, on his return from Virginia, nor within two months thereafter, repay, or offer to the plaintiffs the sum advanced of three cents *per* acre, with interest ; that he has never repaid the sum of $ 3,900, nor the sum of $ 1,053, nor any part of either ; and that he has not kept the covenants aforesaid, but has broken the same. Action commenced, November 4th, 1799.

The defendant pleaded in bar, alleging, that he went to Virginia ; faithfully made inquiry ; found the whole of the tract vacant, and unlocated ; purchased land-office-treasury-warrants ; and located the tract, including in his entries 130,000 acres for the plaintiffs. Afterwards, on the 9th of December, 1795, and before the defendant had procured a grant for the lands so entered and located, the plaintiffs together with other persons, executed certain other articles of agreement, which, after referring to agreements made in September, 1795, contain these words : " We do severally " appoint the said *Alexander Wolcott*, Esquire, our trustee, " or agent, to receive a patent, or patents, in his own name, " for such lands, as by said agreements we are severally en- " titled to, from the said *Alexander*, by virtue of our respec- " tive contracts aforesaid ; and we do hereby agree, that if " the said *Alexander* shall assign or transfer said lands to " *John H. Lathrop*, of Hartford, *Nathaniel Terry*, of Enfield, " and *Horace Hooker*, of Windsor, Esquires, to be by them " holden in trust for us, the subscribers, together with said

" *Alexander*, so far as he shall be interested in any part of " said lands, and to his, and our, heirs, and assigns, respec- " tively, whenever he shall be thereunto requested, after he " shall have received said patent, or patents : In that case, " we agree, that the said *Alexander* shall be holden to have " complied with his said contracts, so far forth as said con- " tracts bind the said *Alexander* to procure patents to issue " to the subscribers severally, or to our agents appointed for " that purpose, as mentioned in said contracts respectively." After stating the identity of the agreements mentioned in these articles and the covenants set forth in the declara- tion, the plea concluded with averring, that although the defendant had always been ready to transfer the whole of the lands mentioned to *Lathrop*, *Terry* and *Hooker*, yet he had never been requested to transfer the same, nor any part thereof.

The plaintiffs replied, that the defendant had never receiv- ed, in his own name, any patent, or patents, of said land.

To this there was a special demurrer, assigning a depar- ture.

The court adjudged the replication sufficient.

The defendant moved to be heard in damages ; and on the hearing, offered witnesses to prove the value of the land, for the non-conveyance of which to the plaintiffs the action was brought. To the admission of this evidence the plain- tiffs objected ; the court ruled it out ; and the defendant filed a bill of exceptions.

*Ingersoll*, and *Daggett*, for the plaintiff in error.

1. The declaration assigns a particular breach of the cove- nant set out, *viz.* " that the defendant did not procure a title, grant, or patent, to the plaintiffs." After this assignment, the general averments, that the defendant hath not kept his cov-

1807.

WOLCOTT
*v.*
DWIGHT.

enant, &c. are to be laid out of the case. (*h*) This action is, then, brought for this breach of covenant. On this, if at all, the plaintiffs are entitled to recover. But the plea strikes at the root of this claim :—It avers, that by a subsequent agreement, before any pretence of a breach, the patent was to issue in the name of the defendants.—How, then, is he liable for not causing a patent to *issue to them ?* Had the declaration alleged, that the defendant covenanted to procure a patent to issue *to himself,* and had assigned, by way of breach, that he did not procure a patent to issue to the plaintiffs, it certainly would have been bad. (*i*)

To this reasoning it may be replied, that he, the defendant, did not perform his part of the subsequent agreement ; for he did not convey to *Lathrop* and others, the trustees. We answer,—he was not *thus* to convey, until *specially* requested ; and the plea *denies,* in terms, such demand. The answer, then, is sufficient, if a demand, in such case, be necessary. That it is necessary, is clear from *Bul. Ni. Pri.* 151.

2. This replication is a departure. This is fatal on a special demurrer. (*k*)

3. The testimony of *Granger,* and others, as to the value of the land, ought to have been admitted. This the Superior Court refused, on the ground, that the money paid by the plaintiffs to the defendant should be the rule of damages. The contract must decide this question. The defendant agreed to refund the money, in case the land about which the contract was made, should have been located previous to his arrival in Virginia ; so that a patent of it could not be attained. The plea alleges, that the land was unlocated, and vacant, and was by the defendant taken up. The fact,

(*h*) 5 *Com. Dig. tit. Pleader.* (*C.* 44, 45, 46, 47, 48.) '*Esp. Dig.* 309. 3 *Term Rep.* 307, *Harris* v. *Mantle.*
(*i*) 5 *Com. Dig. tit. Pleader.* (*C.* 47.)
(*k*) *Ibid.* (*F.* 7, 8, 11.)

then, on the existence of which the money was to be re-paid, fails, and damages only are to be recovered. If the land is of greater value than the purchase money, the plain-tiffs are justly entitled to the full value; if less, their damages should also be less.

*Dana*, and *Dwight*, for the defendants in error.

1. The plea is insufficient. It is no answer to the decla-ration. *Wolcott* is charged in the declaration, 1. with not having procured the title, grant or patent ;—and 2. with having refused to refund the money. To this he answers—that *Dwight* and *Ashmun*, authorized him (if he pleased) to procure a patent in his own name, in trust, for their benefit ; and then he adds, that he has always been ready to transfer the land in fulfilment of his agreement.

First. Here is no performance alleged. When perfor-mance is pleaded, it must be as specific and particular as the breach alleged. Thus, in the case of *Kirby* v. *Hansaker*, (*l*) the covenant was, to enjoy without eviction ; the breach as-signed, that a stranger recovered in ejectment is not good, without shewing elder title. So in *Broking* v. *Cham* (*m*) where the action was covenant for quiet enjoyment, and the breach, that the land had been extended for the King's debt ; judgment was arrested, because it was not averred for *whose debt* to the King the land had been taken. In *Leneret* v. *Rivet*, (*n*) the covenant was—if the plaintiff would acquit the defendant, the defendant would pay the plaintiff £ 10 ; and it was averred, that the plaintiff did acquit the defen-dant. Motion in arrest was allowed, because there was no averment *how* he did acquit. In the case of the *Duke of St. Albans* v. *Shore*, (*o*) it was alleged, that the plaintiff was ready to make *a good title*, but it was not shewn *what title :* Lord ROSSLYN said—" he ought to set out his title."

(*l*) *Cro. Jac.* 315.　　(*m*) *Cro. Jac.* 425.
(*n*) *Ibid.* 503.　　(*o*) 1 *Hen. Bla.* 270.

We contend, that the patents should have been particularly set out, on the authority of the last case cited, and the case of *Philips* v. *Fielding*, (*p*) where it was averred, that the plaintiff had always been ready and willing, and frequently offered, to make a good title to an estate, &c. but it was held, that the covenant was not sufficient, for that the nature of the title should have been shewn. It is material for the court to know *the date* of the patents, that it may appear whether they issued seasonably; for by the terms of the indenture, they were to be ready before the 1st of April, 1796. It is necessary, also, to shew *the quantity* of land which they contained, and the *place of location;* for on all these points we have a right to the opinion of the court.

Secondly. The plea does not even amount to an excuse for not fulfilling, on the part of *Wolcott.* The second agreement authorized *Wolcott*, to procure a patent in his own name, in trust for *Dwight* and *Ashmun*, which, *when done*, should excuse him from the obligation to procure one in *their name*, agreeably to the stipulations in the indenture. Unless he did procure one in his name, the indenture remained in full force. The second writing presented *Wolcott* with an alternative, and unless he performed the latter branch, the first continued obligatory.

Thirdly. The plea certainly contains no discharge from the obligations of the indenture. By the second agreement, it was optional with *Wolcott*, to procure the patent in his own name, or in the names of *Dwight* and *Ashmun*. This did not, in any sense, constitute *Wolcott* the appointee mentioned in the indenture. It only gave him power to make himself their trustee. The construction of this writing contended for by the plaintiff in error, would produce this manifest absurdity : That *Wolcott* having become the appointee alluded to in the indenture, would hold the land originally contracted for by *Dwight* and *Ashmun*, without any responsibility to them.

(*p*) 2 *Hen. Bla.* 133.

Fourthly. No notice is averred, that *Wolcott* had procured patents in his own name. This the contract would necessarily imply ; because no demand of a transfer to *Lathrop*, *Terry* and *Hooker*, could be made by *Dwight* and *Ashmun*, until notice had been given. The indenture was to remain in force, unless *Wolcott* availed himself of the privilege contained in the second writing. Notice of his having availed himself of that writing must of course be given, otherwise it would never be known, and no demand of a transfer could ever be made.

2. It is said, that we have been guilty of a *departure* in our replication. Had we counted on the second articles, as well as the first, we must have averred, that no patents had been procured, either in the names of *Dwight* and *Ashmun*, or in the name of *Wolcott*. Instead of the declaration, the averment appears in the replication. If, then, the covenant was necessary at all, it is in direct aid of the declaration, and tends immediately to fortify it. If it was not necessary, it is surplusage. But, it is also said, that you have alleged, that you made no appointee, and the defendant shews one ; you, therefore, cannot set up the new fact to help out your insufficient declaration. We set up the new fact to rebut the averment in the plea, that you have always been ready to transfer the land. It is, in reality, nothing more than shewing, that neither branch of the alternative has been complied with. If, however, it should be necessary to resort to the argument, that it is surplusage, the authorities will justify us. (*q*)

3. It is contended, that the Superior Court should have admitted evidence, on the part of *Wolcott*, to prove the present value of the land. A moment's attention to the nature of the case, will shew, that there is no foundation for the claim. *Wolcott* covenanted to procure a title, grant, or patent to the land ; or to refund the money which he had re-

(*q*) 1 *Salk.* 139, *Smith* v. *Sharp.* 1 *Stra.* 228, *Gyse* v. *Ellis.*

**1807.**

———

WOLCOTT
*v.*
DWIGHT.

ceived in payment for the land. He has done neither. What is the rule of damages? None other than the sum paid, and interest. Besides, the hearing in damages is an equitable proceeding. *Wolcott* wished to prove, that, if he had fulfilled the first part of his covenant, and obtained the land, *Dwight* and *Ashmun* would have been worse off, than they would be by a total loss of the money paid. This would be strange equity. But the evidence in no sense was relevant to the case. Having failed of obtaining the title to the land, *Dwight* and *Ashmun* call on *Wolcott* to fulfil his engagement to refund the money paid. This being strictly the covenant, what has the value of the land to do with the action?

BY THE COURT, AUSTIN, *Asst.* dissenting,

The judgment was affirmed.

## Bennet *v.* Howard.

### In the Court below,

JAMES BENNETT, *Plaintiff;* NATHANIEL HOWARD, jun.
*Defendant.*

Where the defendant in error has a known place of residence out of the state, and an attorney within, service upon that attorney is not sufficient, without notice to the defendant pursuant to the rule of 1804.

THE defendant pleaded in abatement of this writ of error, " that the same had been no otherwise served on the " defendant, than by leaving a paper, purporting to be a true " copy thereof, with *Nathaniel Terry*, Esquire, of Hartford, " attorney to the defendant; whereas the defendant being " described in said writ as *late of Windsor in the county of* " *Hartford, now of the city, county, and state of New-York*, a " true and attested copy thereof should have been left at " the place of abode of the said *Nathaniel Howard*, jun. in " said City of New-York, by an indifferent person, or a pro- " per officer."